1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TERRI KILPATRICK,                          No.  2:22-cv-255-KJM-KJN

12                 Plaintiff,                    FINDINGS AND RECOMMENDATIONS

13        v.                                     (ECF Nos. 12, 19.)

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17        Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security

18   denying her application for Disability Insurance Benefits.[1]  In her summary judgment motion,

19   plaintiff contends the Administrative Law Judge erred by:  (A) concluding plaintiff's spinal

20   condition did not meet or equal Listing 1.04; and (B) failing to include plaintiff's handling and

21   fingering deficits in the RFC and hypotheticals submitted to the Vocational Expert.  Plaintiff

22   seeks a remand for further proceedings.  The Commissioner opposed, filed a cross-motion for

23   summary judgment, and seeks affirmance.

24        For the reasons that follow, the court recommends plaintiff's motion for summary

25   judgment be DENIED, the Commissioner's cross-motion be GRANTED, and the final decision

26   of the Commissioner be AFFIRMED.

27   _____

28   [1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) for the issuance
     of findings and recommendations.  See Local Rule 304.

                                              1

1  # I.   RELEVANT LAW

2      The Social Security Act provides for benefits for qualifying individuals unable to "engage

3  in any substantial gainful activity" due to "a medically determinable physical or mental

4  impairment."  42 U.S.C. §§ 423(d)(1)(a); 1382c(a)(3).  An Administrative Law Judge ("ALJ") is

5  to follow a five-step sequence when evaluating an applicant's eligibility, summarized as follows:

6          **Step one**: Is the claimant engaging in substantial gainful activity?  If so,
           the claimant is found not disabled.  If not, proceed to step two.
7          **Step two**:  Does the claimant have a "severe" impairment?  If so, proceed
           to step three.  If not, then a finding of not disabled is appropriate.
8          **Step three**: Does the claimant's impairment or combination of
           impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404,
9          Subpt. P, App. 1? If so, the claimant is automatically determined disabled.
           If not, proceed to step four.
10         **Step four**:  Is the claimant capable of performing past relevant work?  If
           so, the claimant is not disabled.  If not, proceed to step five.
11         **Step five**:  Does the claimant have the residual functional capacity to
           perform any other work?  If so, the claimant is not disabled. If not, the
12         claimant is disabled.

13  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995); see also 20 C.F.R. §§ 404.1520(a)(4).  The

14  burden of proof rests with the claimant through step four, and with the Commissioner at step five.

15  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).

16      A district court may reverse the agency's decision only if the ALJ's decision "contains

17  legal error or is not supported by substantial evidence."  Id. at 1154.  Substantial evidence is more

18  than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable

19  mind might accept as adequate to support a conclusion."  Id.  The court reviews the record as a

20  whole, including evidence that both supports and detracts from the ALJ's conclusion.  Luther v.

21  Berryhill, 891 F.3d 872, 875 (9th Cir. 2018).  However, the court may review only the reasons

22  provided by the ALJ in the decision and may not affirm on a ground upon which the ALJ did not

23  rely.  Id.  "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a]

24  review."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

25      The ALJ "is responsible for determining credibility, resolving conflicts in medical

26  testimony, and resolving ambiguities."  Ford, 950 F.3d at 1149.  Where evidence is susceptible to

27  more than one rational interpretation, the ALJ's conclusion "must be upheld."  Id. at 1154.

28  Further, the court may not reverse the ALJ's decision on account of harmless error.  Id.

2

1    **II.      BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS**

2              On June 4, 2019, plaintiff applied for Disability Insurance Benefits, alleging an onset date

3    of May 10, 2019.  (Administrative Transcript ("AT") 313.)  Plaintiff claimed disability due to:

4              neck, anterior posterior cervical reconstruction and fusion, cervical
               thoracic spine, significant spine damage, signal changes in spinal
5              cord, multi-level lumbar spondylosis with degenerative disc,
               cervical spondylosis with myelopathy kyphosis, hyperreflexia on
6              both arms and legs, urgent and frequent urination/incontinence due
               to nerve damage, muscle atrophy in hands, left side weakness,
7              posterior neck damage-pain, being unable to sit for prolonged
               periods, lower back pain, and fine motor skills.
8

9    (AT 344 (cleaned up).)  Plaintiff's applications were denied initially and upon reconsideration,

10   and she sought a hearing before an Administrative Law Judge ("ALJ").  (AT 246-50, 252-56,

11   257.)  At a December 2020 hearing, plaintiff testified about her symptoms, and a vocational

12   expert ("VE") testified about the availability of jobs for persons with similar limitations.  (AT

13   189-218.)

14             On January 27, 2021, the ALJ issued a decision determining plaintiff was not disabled.

15   (AT 28-40.)  At step one, the ALJ determined plaintiff had not engaged in substantial gainful

16   activity since the alleged onset date.  (Id.)  At step two, the ALJ determined plaintiff had the

17   following severe impairments:  "multilevel degenerative disc disease with radiculopathy, bilateral

18   bunions, and osteoarthritis."  (Id.)

19             At step three, the ALJ determined plaintiff's impairments did not meet or medically equal

20   the severity of one of the listed impairments in Appendix 1.  (AT 33.)  Relevant here, the ALJ

21   found plaintiff's spinal limitations did not meet or equal Listing 1.04 (disorders of the spine).

22   (Id.)  The ALJ considered plaintiff's complaints of burning pain in the back of her neck, her

23   assertions about her limitation of motion of her cervical spine, her complaints of tingling and

24   numbness in her arms and feet, and her ability to participate in activities of daily living.  (AT 35-

25   38, citing AT 475, 576-77, 640-41, 684.)  However, the ALJ also cited records that showed

26   plaintiff did not present as being in acute distress, had 5/5 muscle strength in her extremities, was

27   able to drive and handle a workload, and only had reported tingling and numbness in her arms

28   and feet in limited circumstances.  (Id., citing AT 473, 475, 640-41, 684.)

3

The ALJ then determined plaintiff had the residual functional capacity ("RFC") to engage in light work, except she:

> [C]ould occasionally balance, stoop, crouch, crawl, reach overhead bilaterally, climb ladders, ropes, scaffolds, ramps, and stairs[;] could frequently kneel[;] should avoid concentrated exposure to extreme cold temperatures and weather, to vibration, to hazards … to pulmonary irritants[;] cannot be exposed to repetitive jarring or bouncing, and cannot constantly or rapidly flex, rotate, or extend the neck[;] can shift position between sitting and standing as frequently as every half hour without loss of productivity.

(AT 34.)  This RFC was based in part on the examination of Dr. Glantz, who opined plaintiff was limited to, among other things, frequent handling and fingering with either upper extremity.  (AT 37.)  The ALJ found Dr. Glantz's opinion persuasive, adopting most of Dr. Glantz's opinions into the RFC but omitting the handling and fingering limitations.  (Id.)

The ALJ found at step four that plaintiff was able to do past relevant work as a medical records clerk.  (AT 38; ECF No. 20-2 at 2 (citing DICOT 245.362-010, medical-record clerk, at 1991 WL 672269).)  The ALJ also found at step five that plaintiff could do other jobs that exist in significant numbers in the national economy, such as office helper (13,000 jobs nationwide), collator operator (20,000 jobs nationwide) and photocopy machine operator (11,000 jobs nationwide).  (AT 39-40; ECF No. 20-2 at 4-9 (citing DICOT 239.567-010, office helper, at 1991 WL 672232; DICOT 208.685-01, collator operator, at 1991 WL 671753; DICOT 207.685-014, photocopying-machine operator, at 1991 WL 671745).)  Each of these jobs require, at most, frequent handling and fingering.  (See Id.)  Thus, the ALJ determined plaintiff was not disabled for the relevant period.  (AT 40.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross-motions for summary judgment.  (ECF Nos. 1, 12, 19.)

III.   **ISSUES PRESENTED**

Plaintiff contends the decision is not supported by substantial evidence in that the ALJ should have:  (A) found plaintiff's limitations met or equaled Listing 1.04; (B) included Dr. Glantz's frequent handling or fingering deficits in the RFC.  (ECF Nos. 12; 20.)

The Commissioner disagrees, arguing the ALJ's determinations are supported by

4

1   substantial evidence because the ALJ:  (A) properly evaluated plaintiff at step three for Listing

2   1.04; (B) properly included the limitations found to exist in crafting the RFC, and even if not,

3   properly found plaintiff was able to perform her past relevant and other work.  (ECF No. 19.)

4   **IV.    DISCUSSION**

5       **A.  The ALJ's findings regarding Listing 1.04 are supported by substantial evidence.**

6           **Legal Standards – Listings at Step Three**

7           If a claimant's impairments or combination of impairments meet or equal a listed

8   impairment, then the claimant is automatically determined disabled and the ALJ does not need to

9   proceed to step four.  See Lester, 81 F.3d at 828 n.5 (9th Cir. 1995).

10          "For a claimant to show [her] impairment matches a listing, it must meet all of the

11  specified medical criteria.  An impairment that manifests only some of those criteria, no matter

12  how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

13          For listing 'equivalency,' plaintiff "must present medical findings equal in severity to *all*

14  the criteria for the one most similar listed impairment."  Id. (emphasis in original).  A

15  determination of medical equivalence must rest on objective medical evidence.  See Lewis v.

16  Apfel, 236 F.3d 503, 514 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999)

17  (noting that a generalized assertion of functional problems is not enough to establish disability at

18  step three); see also 20 C.F.R. § 404.1529(d)(3) ("In considering whether your symptoms, signs,

19  and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a

20  listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are

21  at least equal in severity to the listed criteria.  However, we will not substitute your allegations of

22  pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity

23  of your impairment(s) to that of a listed impairment.").

24          When considering a listing, an ALJ cannot give a boilerplate finding to support a

25  conclusion that a claimant's impairments do not meet or equal a listed impairment.  Lewis, 236

26  F.3d at 512.  However, "[t]he mere diagnosis of an impairment listed in Appendix 1 is not

27  sufficient to sustain a finding of disability."  Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

28  Ultimately, the claimant "bears the burden of proving that she has an impairment that meets or

1   equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations."

2   Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

3   **Analysis**

4   To satisfy Listing 1.04, plaintiff must show:

5   [A] disorder of the spine . . . resulting in compromise of a nerve root . . . with . . .
    evidence of a nerve root compression characterized by [1] neuro-anatomic
6   distribution of pain, [2] limitation of motion of the spine, [3] motor loss (atrophy
    with associated muscle weakness or muscle weakness) accompanied by sensory or
7   reflex loss and, [4] if there is involvement of the lower back, positive straight-leg
8   raising test . . . ."

9   20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.[2]

10  Here, at step three, the ALJ recited these requirements, then concluded "[plaintiff's]

11  impairment [did] not meet these conditions because the record [did] not demonstrate any of the

12  above requirements."  (AT 33.)  The ALJ reasoned:

13  The medical evidence fails to document any physical impairment of listing-level
    severity.  In doing so, it is noted that no acceptable medical source has mentioned
14  findings equivalent in severity to the criteria of any listed impairment, individually
    or in combination, and no treating physician has credibly concluded that the
15  claimant has any physical impairment, or combination thereof, severe enough to
16  meet or equal a listing.

17  (AT 33.)  Plaintiff contends these statements in the step three section are inadequate and

18  conclusory.  It is true that an ALJ cannot provide a boilerplate finding to support a conclusion that

19  plaintiff's impairments fail to meet or equal a listing.  Lewis, 236 F.3d at 512.  However, the ALJ

20  did analyze the evidence concerning plaintiff's cervical spine fusion from her C3 to T3—just later

21  in the decision.  (AT 35-36.)  This is permissible.  See Lewis, 236 F.3d at 512-13 (finding it

22  adequate for an ALJ to explain their findings in the "Statement of the Case" section as opposed to

23  the "Findings" section).

24  As to whether the ALJ adequately analyzed each portion of Listing 1.04, the undersigned

25  finds the decision supported by substantial evidence and free from legal error.

26

27  [2] Listing 1.04 has been replaced by Listing 1.15 as of April 2, 2021.  However, the undersigned
    will apply Listing 1.04 to this matter as it was in effect on the date of the ALJ's decision on
28  January 27, 2021.  See 85 F.R. 78164-01.

6

1    Regarding the neuro-anatomic distribution of pain, the ALJ cited records showing the

2    plaintiff was normal except for some tenderness in her back and neck in a July 2019 examination.

3    (AT 36, citing AT 576-77.)  The ALJ noted plaintiff's complaints of burning pain in the back of

4    her neck, severe pain causing an inability to return to work, pain in neck after prolonged walking,

5    and other pain generally.  (AT 36, citing  AT 473, 576, 684.)  However, the plaintiff testified

6    taking Motrin and Tylenol relieved the stress she felt in her neck.  (AT 204.)  The ALJ also noted

7    plaintiff's self-reported pain varied from 0/10 to 4/10, she only took Tylenol to remedy the pain,

8    and the physical examination showed plaintiff was not in acute distress.  (AT 36, citing  AT 473.)

9    This was a permissible rejection of plaintiff's claim here.  See Warre v. Comm'r, 439 F.3d 1001,

10   1006 (9th Cir. 2006) ("[I]mpairments that can be controlled effectively with medication are not

11   disabling for the purpose of determining eligibility for SSI benefits.").

12   The ALJ also addressed the limitation of motion of the spine by noting plaintiff had a

13   limited range of motion in her cervical spine, relying on examinations that showed plaintiff had

14   decreased range of motion in her neck due to her prior fusion surgery.  (AT 37, citing AT 640-41,

15   686.)  The ALJ agreed that plaintiff had limited range of motion with some persistent symptoms,

16   despite an assertion that the records did not reach the level of limitations plaintiff subjectively

17   alleged.  (AT 37-38.)  Even so, meeting one of the several requirements of Listing 1.04 would not

18   be enough for a disability finding as the plaintiff must meet all the listing's criteria.  Sullivan, 493

19   U.S. at 530; see also, e.g., Kallenbach v. Berryhill, 766 F. App'x 518, 520 (9th Cir. 2019) (noting

20   plaintiff must demonstrate they met all the Listing's criteria for a disability finding).

21   Regarding motor loss accompanied by sensory or reflex loss, the ALJ noted plaintiff had

22   5/5 muscle strength in extremities with some atrophy in interosseus in May 2019.  (AT 36, citing

23   AT 473, 640-41.)  Furthermore, no gross motor or sensory deficits were noted in a December

24   2020 examination.  (AT 37, citing AT 686.)  However, the ALJ acknowledged plaintiff reported

25   tingling and numbness in her arms and feet when her neck was flexed, or her feet were cold.  (Id.,

26   citing AT 684.)  Even so, on examination her cranial nerve testing was grossly intact and

27   Romberg was negative.  (Id., citing AT 686.)  Ultimately, the ALJ found the complete treatment

28   records not to document the limitations plaintiff subjectively alleged.  (AT 37-38.)  Resolving

7

1   ambiguities and determining credibility are for the ALJ.  Ford, 950 F.3d at 1149.

2           Plaintiff cites other records to show that she meets or equals Listing 1.04 and would be at

3   odds with the ALJ's findings.  For instance, plaintiff cites an examination in 2018 where a

4   neurologist noted her "muscle strength shows weakness[,]" which would be at odds with the

5   ALJ's note of a 2019 examination showing plaintiff's 5/5 muscle strength in all extremities.  (See

6   AT 500, 473.)  However, the regulations are clear that the ALJ need not cite all evidence from a

7   single source, but may consider the source in bulk.  20 C.F.R. § 404.1520(c).  As to which of

8   these pieces of contradictory evidence to follow, the ALJ appropriately resolved the conflict.

9   Ford, 950 F.3d at 1149.

10          Plaintiff also makes an equivalence argument for satisfying the motor loss requirement.

11  (ECF No. 12 at 13.)  Plaintiff contends her spasticity of the legs is like muscle weakness in that it

12  interferes with her movement and balance.  (Id., citing AT 500, 641.)  Although the ALJ did not

13  specifically address a spasticity argument, he still addressed plaintiff's issues with balancing.

14  (AT 34.)  The ALJ noted the evidence supporting and detracting from plaintiff's claim regarding

15  her spinal condition, and it does not appear to the undersigned the ALJ has engaged in cherry-

16  picking around the record to construct a result.  Cf. Holohan v. Massanari, 246 F.3d 1195, 1207

17  (9th Cir. 2001) (finding selective reliance on the record where the ALJ relied only on a few

18  entries and ignored many others that supported the alternative).  Further, and again, even if

19  plaintiff's argument was persuasive here, her argument still fails on the neuro-anatomic pain

20  argument.  Sullivan, 493 U.S. at 530; Kallenbach, 766 F. App'x at 520.

21          For these reasons, the undersigned finds the ALJ appropriately resolved the ambiguities

22  surrounding plaintiff's spinal condition.  Ford, 950 F.3d at 1149.  Although the ALJ initially gave

23  a conclusory determination relating to Listing 1.04, the subsequent reasoning as outlined above is

24  sufficient for the court to follow the ALJ's reasoning.  Lambert, 980 F.3d at 1277 (noting the ALJ

25  need only provide sufficient reasoning that allows a court to review their decision).

26  ///

27  ///

28

8

1

    **B.  The ALJ's omission of manipulative limitations in the RFC and hypothetical posed to the VE was harmless.**

2

3        The ALJ determined plaintiff had the RFC to perform light work but did not include

4 manipulative limitations with handling or fingering.  (AT 34.)  The RFC appears to be based on,

5 among other things, Dr. Glantz's opinion, which the ALJ found to be persuasive.  (AT 37.)

6 However, Dr. Glantz opined plaintiff should be limited to frequent handling and fingerling with

7 either upper extremity.  (AT 642, 213-15.)  It is unclear why the ALJ excluded these limitations

8 opined by Dr. Glantz from the RFC.  Such omission, without explanation, constitutes error

9 because an ALJ must account for all the limitations of a plaintiff that are supported by substantial

10 evidence in the record as a whole.  Bray v. Comm'r, 554 F.3d 1219, 1228 (9th Cir. 2009).

11        However, it appears this error is harmless.  The VE testified a person with plaintiff's

12 limitations could perform work as a medical records clerk, an office helper, a collator/operator,

13 and a photocopy machine operator.  (AT 213-216.)  None of these jobs require more than

14 frequent handling or fingering.  (See ECF No. 20-2 at 2-9 (citing DICOT 239.567-010, office

15 helper, at 1991 WL 672232; DICOT 208.685-01, collator operator, at 1991 WL 671753; DICOT

16 207.685-014, photocopying-machine operator, at 1991 WL 671745).)  Thus, the omission of Dr.

17 Glantz's additional manipulative limitations had no bearing on the ALJ's ultimate findings.  See

18 Ford, 950 F.3d at 1154 ("We may affirm the ALJ's decision even if the ALJ made an error, so

19 long as the error was harmless.").

20        Plaintiff contends in her reply brief the DOT listings for the proposed jobs are out of date,

21 and given the changes in technology, these jobs could easily require handling or fingering more

22 than frequently.  (ECF No. 20 at 3.)  To the extent plaintiff raises an argument about the number

23 of jobs available under these DOT listings, or the requirements of such jobs, plaintiff has waived

24 this argument for failing to raise it in her opening brief.  See Smith v. Marsh, 194 F.3d 1045,

25 1052 (9th Cir. 1999) (noting that arguments not raised by a party in its opening brief are deemed

26 waived).

27 ///

28

9

**CONCLUSION**

Beyond plaintiff's challenges, the court finds the ALJ's decision otherwise supported by substantial evidence in the record and free from legal error.  Ford, 950 F.3d at 1148 (noting that a district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence.")  Accordingly, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for summary judgment (ECF No. 12) be DENIED;

2.      The Commissioner's cross-motion (ECF No. 19) be GRANTED;

3.      The final decision of the Commissioner be AFFIRMED; and

4.      The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  March 15, 2023

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

AM/SD,kilp.255

10